IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

MARCUS ONVANI,

    Plaintiff,

v.

LOCKHEED MARTIN CORPORATION,
d/b/a LOCKHEED MARTIN SPACE SYSTEMS,

    Defendant.

_____

**COMPLAINT**
_____

COMES NOW Plaintiff, Marcus Onvani ("Plaintiff" or "Mr. Onvani") by and through his counsel, Lisa R. Sahli, Attorney at Law, LLC, and hereby respectfully alleges for his Complaint, as follows:

**I.    INTRODUCTION**

1.    42 U.S.C. Section 1981 guarantees to all persons within the jurisdiction of the United States the same right to make and enforce contracts as is enjoyed by white citizens. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Colorado Anti-Discrimination Act ("CADA"), C.R.S. § 24-34-401, *et seq.*, prohibit race and national origin discrimination and retaliation in employment. Mr. Onvani is a Persian American of Iranian descent with dual citizenship in the United States and Iran. As Mr. Onvani's employer, Defendant discriminated against him, and failed to extend to him the same benefits, privileges, terms and conditions that it provided to his Caucasian counterparts. Defendant violated its own directives, policies and

procedures in order to terminate Mr. Onvani's employment, because of his race, ethnicity, and/or national origin.  Defendant denied Mr. Onvani certain compensation and benefits to which he was contractually entitled.  Mr. Onvani's request for intervention to stop Defendant's discriminatory treatment was deliberately and/or recklessly ignored.  As a result of Defendant's willful, unlawful discriminatory and/or retaliatory acts and omissions, Mr. Onvani has suffered lost wages, compensation and benefits, damage to his professional reputation, emotional distress, stress, anxiety, inconvenience, loss of enjoyment of life, legal expenses and other significant injuries, damages and losses.

## II.   JURISDICTION AND VENUE

2.   Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.  This action is authorized and instituted pursuant to Sections 1981 of the Civil Rights Act of 1991, 42 U.S.C. §§ 1981, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

3.   The employment practices alleged herein to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## III.   ADMINISTRATIVE PREREQUISITES

4.   On or about March 13, 2020, Plaintiff filed a Charge of Discrimination with the Colorado Civil Rights Division and U.S. Equal Employment Opportunity Commission ("EEOC"), alleging discrimination and retaliation on the basis of race and national origin. The CCRD issued its Notice of Right to Sue on October 15, 2020.  The EEOC subsequently issued its Notice of Right to Sue on December 9, 2020.

### IV.  PARTIES

5. Plaintiff Marcus Onvani is a citizen of the United States and a resident of the State of Colorado. At all times referenced herein, Mr. Onvani was employed by Lockheed Martin Corporation, d/b/a Lockheed Martin Space Systems.

6. Defendant Lockheed Martin Corporation is an aerospace, defense, security and advanced technology company headquartered in Bethesda, Maryland, and doing business in Colorado. Lockheed Martin Space Systems is one of four major business divisions of Lockheed Martin, headquartered in Littleton, Colorado, and employs more than 20,000 individuals in the United States and internationally.

### V.  FACTUAL ALLEGATIONS

7. Plaintiff is a Persian American of Iranian descent, with dual citizenship in the United States and Iran.

8. Mr. Onvani is a third generation Lockheed Martin employee, following his grandfather and both of his parents. Together, Mr. Onvani's family served Lockheed Martin for more than 80 years.

9. Mr. Onvani was first employed by Lockheed Martin in various financial positions from 2004 to sometime in 2008.

10. On June 15, 2015, Lockheed Martin offered Mr. Onvani a position as Director of Finance and Business Operations Special Programs for Lockheed Martin Space.

11. Mr. Onvani accepted Defendant's offer.

12. Along with other benefits, as part of his contract of employment, Mr. Onvani was entitled to an annual Management Incentive Compensation Plan ("MICP") bonus,

annual Long Term Incentive ("LTI") awards, and Defendant's Executive Severance Plan benefits.

13. Throughout his employment, Mr. Onvani was a dedicated and loyal employee who successfully performed the significant demands and responsibilities of his position, which consisted of managing a two billion dollar program portfolio consisting of five lines of business and more than 150 direct reports.

14. Given his education, training, commitment and experience, Mr. Onvani performed at an exceptional level, and quickly became known at Lockheed Martin for high level problem solving, strategic thinking and innovation.

15. Mr. Onvani at all times maintained a dormant security clearance in the event that Defendant ever chose to place him in a position requiring a security clearance.

16. At no time during his employment did Mr. Onvani ever possess or have access to classified documents or networks.

17. Mr. Onvani's performance reviews were uniformly stellar. Having consistently exceeded expectations, Mr. Onvani was awarded merit increases every year and received significant performance-related MICP bonuses and LTI awards.

18. At all times relevant, Defendant was an "employer" within the meaning of 42 U.S.C. § 2000e(b), and C.R.S. § 24-34-401(3).

19. At all times relevant, Defendant employed more than 500 employees.

**Mr. Onvani Learns of a Racially Motivated Misdemeanor Shoplifting Charge**.

20. On or about July 22, 2019, Mr. Onvani learned there might be an active warrant for his arrest in Tarrant County, Texas. After contacting an attorney to

investigate, on or about August 2, 2019, Mr. Onvani learned of an unspecified misdemeanor shoplifting charge against him.

21. On or about August 5, 2019, Mr. Onvani traveled to Tarrant County, Texas, completed a walk though and posted a $300 cash bond.  Other than that the charge was a misdemeanor for theft of property in an amount between $100 and $750, the facts underlying the charge were completely unknown to him.

22. Upon his return to his job on August 12, 2019, Mr. Onvani self-reported the misdemeanor charge, and truthfully reported that he was unaware of the circumstances upon which the charge was based, and was seeking dismissal.

23. On or about September 9, 2019, Mr. Onvani was placed on paid administrative leave, pending investigation of the Charge.

24. On September 19, 2019, the Tarrant County Criminal Court unconditionally dismissed the charge against Mr. Onvani on the state's motion to dismiss.

25. On or about September 20, 2019, Mr. Onvani for the first time reviewed the District Attorney's evidence of the alleged shoplifting incident that was dismissed the previous day.   The surveillance video and other evidence did not provide evidence of shoplifting by Mr. Onvani.

26. While reviewing the DA's evidence, Mr. Onvani discovered that he had been racially profiled and surveilled by Kohl's Loss Prevention personnel during a shopping trip with his mother on February 23, 2019 because he looked "Iranian" or "Middle Eastern," and allegedly "looked suspicious" when he walked in.

**Defendant Prematurely Imposes the Harshest Possible Discipline.**

27. Although he had committed no offense worthy of discipline or termination under applicable Lockheed Martin directives, policy or procedure, on September 13, 2019, Defendant, acting through its Administrative Review Committee ("ARC"), terminated Mr. Onvani's employment and suspended him without pay pending review by its Executive Review Committee ("ERC").

28. Lockheed Martin Cross Function Procedure CRX-508 requires that management of an employee being considered for discipline must be afforded an opportunity to provide input to the ARC and ERC before any disciplinary decision is made.

29. In violation of Cross Function Procedure CRX-508, Defendant excluded Mr. Onvani's manager, Sean Daily, from participating or providing meaningful input to the ARC and/or ERC.

30. The ARC and ERC decisions rested entirely upon racial profiling by Kohl's, and on its investigator's racially, ethnically and national origin biased investigation of the misdemeanor charge.

31. On October 16, 2019, the ERC upheld the termination decision.

**Defendant's Investigation of the Charge is Discriminatory**.

32. On August 12, 2019, Steve Ownby, an investigator employed by Defendant, commenced his investigation of the misdemeanor charge.

33. During what felt to Mr. Onvani like an "interrogation" that day, Mr. Ownby identified Mr. Onvani as the "target" of an investigation, disclosed that the charge involved a pair of socks allegedly stolen from a Kohl's department store, and asked him if "Onvani" was Iranian.

34. Whenever Mr. Ownby spoke the word "Iran" or "Iranian," he non-verbally communicated its significance to him by using a mocking tone, elongating the syllables, rolling his eyes, and/or cocking his head in a suggestive manner.

35. Mr. Ownby further prodded Mr. Onvani for information about the shoplifting incident. Because he does not shoplift and reasonably lacked any recollection of the Kohl's shopping trip which had occurred more than five months earlier, Mr. Onvani was understandably confused and at a loss to provide specific details about the incident.

36. During the August 12 meeting with Mr. Ownby, Mr. Onvani provided what little information he had heard from others, and truthfully denied that he had stolen or shoplifted.

37. On September 9, 2019, Mr. Ownby summoned Mr. Onvani to a second interrogation, which started with questions about Mr. Onvani's recent trip to Thailand, followed inexplicably by: "Did you go to Iran?"

38. Mr. Ownby then advised Mr. Onvani that his investigation was directed by Derrick Wehner[1], and stated that Mr. Wehner had directed him to visit the Kohl's store in Arlingon, Texas, and that he had done so.

39. After stating that he had reviewed surveillance video, Mr. Ownby stated that he had positively identified Mr. Onvani and was "convinced" that he had committed the crime.

40. Mr. Ownby then pressed Mr. Onvani to admit that he had been dishonest during their previous interview, falsely claiming that his statements were inconsistent with the video.

---

[1] At all times relevant, Mr. Wehner was apprised of Mr. Onvani's Iranian ethnicity, race and dual citizenship.

41. Blindsided, Mr. Onvani truthfully reported that he had no knowledge or memory of the shopping trip to Kohl's, and that he did not steal anything from Kohl's.

42. In a written statement the following day, Mr. Onvani truthfully reported that he was provided no formal details of the shoplifting charge, did not commit the crime, and had no knowledge of any theft.

43. Mr. Onvani further truthfully reported that he had no criminal record, and that he was confused by the information Mr. Ownby provided. In closing his statement, Mr. Onvani stated:

> I was truthful in my 12 Aug 2019 disclosure, and in all verbal and written interactions with you. . .  I am troubled that it appears you have reached a personal conclusion regarding the above claim before allowing for both prosecution and defense evidence to be presented.  I request and urge Lockheed Martin to allow for due process before rendering a premature adverse ruling regarding this allegation or my personal honesty and integrity.

44. Lockheed Martin Cross Function Procedure CRX-021 provides that investigations are to be performed in a professional, non-threatening manner.

45. Cross function Procedure CRX-021 also provides that investigators are prohibited from reaching legal conclusions with regard to matters being investigated.

46. Contrary to Cross Function Procedure CRX-021, in investigating the misdemeanor shoplifting charge, Mr. Ownby assumed guilt at every step, and opportunistically misinterpreted Mr. Onvani's understandable confusion about the charge, and inability to recall the February shopping trip, as positive evidence of guilt.

47. Mr. Ownby's fixation on Mr. Onvani's race, ethnicity and national origin, and his refusal to accept Mr. Onvani's honest inability to recall an insignificant shopping trip

that had occurred months before, demonstrated a lack of professionalism and inability to maintain objectivity as required by Cross Function Procedure CRX-021.

48. Mr. Ownby's September 10, 2019 investigation report contains numerous false statements. His conclusion, that Mr. Onvani knowingly concealed and stole store merchandise and was arrested for same, is without factual basis and false.

49. Mr. Ownby's further statements that Mr. Onvani provided false and misleading information to him during the investigation, and provided false information to the U.S. Government are, likewise, without factual basis and false.

50. Despite Mr. Onvani's innocence and dismissal of the misdemeanor shoplifting charge, Mr. Ownby assumed guilt and rushed to judgment because of Mr. Onvani's race, ethnicity and/or national origin.

**Mr. Onvani Engages in Protected Conduct by Reporting Racial Profiling by Kohl's and Race and National Origin Discrimination by Mr. Ownby to the ERC**.

51. On or about October 3, 2019, Mr. Onvani timely submitted his appeal to the ERC. In his appeal, Mr. Onvani advised the ERC that he believed he had been racially profiled by Kohl's based on his race and national origin, and that unfair race and/or national origin bias had tainted Mr. Ownby's investigation.

52. In his appeal, Mr. Onvani also notified the ERC that the misdemeanor charge had been unconditionally dismissed by the court.

53. Based on the above, and on his long and unblemished history of successful job performance, Mr. Onvani requested that the ERC review and reverse the termination decision.

54. Despite notice that the original charge and Mr. Ownby's investigation were marred by race and/or national origin discrimination, the ERC ratified Mr. Ownby's demonstrated race, ethnic and/or national origin discrimination by affirming the termination.

55. The ERC conducted no investigation for race and/or national origin bias in the investigation before upholding the termination, and its decision was made recklessly and/or in willful disregard of Mr. Onvani's protected rights.

56. At all times relevant, Defendant understood that discriminating against employees based on race, ethnicity and/or national origin violates clearly established statutory rights.

**The Discipline was Excessive and Inconsistent with Company Policy**.

57. Lockheed Martin Cross Function Procedure CRX-022 (Convicted, Debarred, or Suspended Persons or Firms), and Directive N1.5.1-T2-HRMgt-1.3-D (Conduct and Disciplinary Action for Salaried Employees) identify types of misconduct that are subject to disciplinary action.  These include, *inter alia*, theft or fraud resulting in damages or destruction of any Lockheed, employee or customer property, or conviction for a felony.

58. Misdemeanor charges, and even misdemeanor convictions, are not listed as misconduct meriting any form of discipline by Defendant.

59. Contrary to its own Directives and procedure, Defendant imposed the harshest possible discipline by terminating Mr. Onvani for a petty misdemeanor shoplifting charge that was unconditionally dismissed before the ERC issued its final determination.

**Defendant Treats Caucasian Employees Preferentially.**

60. Caucasian Lockheed Martin Space employees who had more serious criminal *convictions* on their records were treated better than Mr. Onvani.

61. For example, as it was terminating Mr. Onvani, Defendant hired a Caucasian male to join the same business area, within the same Finance and Business Operations organization, as a Director.  In 2000, this Caucasian male was charged with felony theft in the state of Georgia, and ordered to pay restitution of $1,362 to retailer, Abercrombie and Fitch, as a condition of having the charge dismissed.

62. In another example, a Caucasian male who was convicted of two Class 1 misdemeanor charges on or about October 25, 2012, while employed by Lockheed Martin, was not terminated, and has since been promoted to Chief Financial Officer of the company.

**Defendant Deprived Mr. Onvani of Incentives He had Substantially Earned.**

63. At the time of his unlawful termination, Mr. Onvani had substantially earned Long Term Incentive ("LTI") benefits which were contractually scheduled to vest, after three years, on January 26, 2020.

64. By unlawfully terminating his employment, Defendant breached its contract and deprived Mr. Onvani of this contracted for benefit.

65. Defendant likewise deprived Mr. Onvani of his contractual entitlement to LTI benefits scheduled to vest on February 22, 2021, and on February 21, 2022.

66. At the time of his unlawful termination, Mr. Onvani had substantially earned his 2019 MICP bonus, which was to be paid in or about February 2020.

67. By unlawfully terminating his employment, Defendant breached its contract by depriving Mr. Onvani of his right to receive this contracted for benefit.

**Defendant Denied Mr. Onvani Executive Severance Plan Benefits**.

68. As further evidence of disparate treatment and/or retaliation, when it unlawfully fired Mr. Onvani, it breached its contract by denying him benefits to which he was contractually entitled under the Executive Severance Plan.

69. While denying Plaintiff benefits to which he was contractually entitled, Defendant paid executive severance benefits to Caucasian executives who were separated from Finance and Business Operations, including Steve Battershell and James Pennington.

70. Defendant discriminated against Mr. Onvani by denying him the same benefits, privileges, terms and conditions of his employment contract as those enjoyed by Caucasian workers.

71. Defendant retaliated against Mr. Onvani by terminating him without first conducting any investigating of his claims of racial profiling by Kohl's, or of race and national origin discrimination by its investigator.

72. Defendant further discriminated, and retaliated against Mr. Onvani for his protected conduct, by denying him compensation and benefits to which he was contractually entitled, while paying same to similarly situated Caucasian executives who did not report race and/or national origin discrimination.

73. Defendants' discriminatory and retaliatory termination of Mr. Onvani's employment due to his race, ethnicity and/or national origin has caused him to suffer significant injuries, damages and losses.

## VI.  STATEMENT OF CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
(*Discrimination in Violation of 42 U.S.C. §§ 1981*)

74. Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

75. As a Persian American of Iranian descent, Mr. Onvani belongs to the class of persons protected under § 1981 of the Civil Rights Act of 1866, as amended.

76. At all times relevant, Mr. Onvani was a dedicated and loyal employee who excelled in his position as Director of Finance and Business Operations Special Programs.

77. Despite his excellent job performance, Defendant denied Mr. Onvani the same right to make, perform and terminate his contract of employment as was provided to similarly situated Caucasian employees, by subjecting him to a racially, ethnically and national origin biased investigation, and imposing harsher discipline than was contemplated by its own policies, procedures and directives, or meted out to similarly situated Caucasian executives.

78. Defendant thereby denied Mr. Onvani equal benefits, privileges, terms and conditions of employment, in violation of 42 U.S.C. § 1981.

79. The facts and circumstances leading to Mr. Onvani's termination give rise to a reasonable inference that it resulted from unlawful discrimination.

80. Defendant, either directly or by and through its agents, discriminated against Mr. Onvani due to his race, ethnicity and/or national origin.

81. Defendant's discrimination against Mr. Onvani in the performance and termination of his employment contract, and the denial to Mr. Onvani of equal benefits, privileges, terms and conditions of employment, in violation of 42 U.S.C. § 1981, was at

all times intentional, malicious, and/or committed in reckless disregard of Mr. Onvani's federally protected rights.

82. As a direct and proximate result of Defendant's deliberate, malicious and/or reckless discriminatory acts and conduct, Mr. Onvani has suffered significant economic, consequential, special and compensatory injuries, losses and damages.

83. In addition to his other damages, Mr. Onvani is entitled to recover his reasonable attorney's fees, interest and costs under this First Claim for Relief.

### SECOND CLAIM FOR RELIEF
(*Discrimination in violation of Title VII & the CADA*)

84. Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

85. As a Persian American of Iranian descent, Mr. Onvani is and at all times was within the class of persons protected under Title VII of the Civil Rights Act of 1964, as amended. 42 U.S.C. § 2000e, *et seq.*, and the CADA, C.R.S. § 24-34-401, *et seq.*, as amended.

86. At all times relevant, Mr. Onvani was a dedicated and loyal employee who excelled in his position as Director of Finance and Business Operations Special Programs.

87. Despite his excellent performance, Defendant treated Mr. Onvani less favorably than similarly situated Caucasian executives.

88. Defendant discriminated against Mr. Onvani on the basis of his race, ethnicity and/or national origin by making false accusations against him and terminating his employment.

89. The facts and circumstances of Mr. Onvani's termination give rise to a reasonable inference that it resulted from unlawful discrimination.

90. Defendant is liable for the acts and omissions of its agents and employees. Defendant, either directly or by and through its agents and employees, discriminated against Mr. Onvani due to his race, ethnicity and/or national origin.

91. Defendant's acts and omissions complained of were committed with malice and/or reckless indifference to his protected rights.

92. As a direct and proximate result of Defendant's deliberate, malicious and/or reckless discriminatory acts and conduct, Mr. Onvani has suffered significant economic, consequential, special and compensatory injuries, losses and damages.

93. In addition to his other damages, Mr. Onvani is entitled to recover his reasonable attorney's fees, interest and costs under this Second Claim for Relief.

**THIRD CLAIM FOR RELIEF**
(*Retaliation in violation of 42 U.S.C. § 1981*)

94. Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

95. As a Persian American of Iranian descent, Mr. Onvani belongs to the class of persons protected under § 1981 of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

96. On or about October 3, 2019, Mr. Onvani engaged in protected conduct by reporting that the misdemeanor charge was the result of racial profiling by Kohl's Loss Prevention, and by reporting race and/or national origin discrimination by Defendant's investigator, Steve Ownby.

97. On or about October 16, 2019, without first conducting any investigation of Mr. Onvani's complaint of discrimination, Defendant, acting by and through the ERC, retaliated by upholding the discriminatory termination decision.

98. Defendant further retaliated by denying Mr. Onvani executive severance benefits to which he was contractually entitled (which included prorated payment of his MICP bonus, and other benefits), and by depriving him of his right to LTI benefits that were scheduled to vest on January 26, 2020.

99. Defendant upheld the termination and deprived Mr. Onvani of his contractual rights under circumstances that give rise to a reasonable inference that it resulted from unlawful retaliation.

100. Defendant, either directly or by and through its agents, retaliated against Mr. Onvani due to his protected conduct in opposing discrimination based on his race, ethnicity and/or national origin.

101. Defendant's retaliation against Mr. Onvani in the performance and termination of his employment contract, and the denial to Mr. Onvani of equal benefits, privileges, terms and conditions of employment, in violation of 42 U.S.C. § 1981, was at all times intentional, malicious, and/or committed in reckless disregard of Mr. Onvani's federally protected rights.

102. As a direct and proximate result of Defendant's deliberate, malicious and/or reckless retaliatory acts and conduct, Mr. Onvani has suffered significant economic, consequential, special and compensatory injuries, losses and damages.

103. In addition to his other damages, Mr. Onvani is entitled to recover his reasonable attorney's fees, interest and costs under this Third Claim for Relief.

## FOURTH CLAIM FOR RELIEF
(*Retaliation in violation of Title VII & the CADA*)

104. Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

105. As a Persian American of Iranian descent, Mr. Onvani belongs to the class of persons protected under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended, and the CADA, C.R.S. § 24-34-401, *et seq.*, as amended

106. On or about October 3, 2019, Mr. Onvani engaged in protected conduct by reporting that the misdemeanor charge was the result of racial profiling by Kohl's Loss Prevention, and by reporting race and/or national origin discrimination by Defendant's investigator, Steve Ownby.

107. On or about October 16, 2019, without first conducting any investigation of Mr. Onvani's complaint of discrimination, Defendant, acting by and through the ERC, retaliated by upholding the discriminatory termination decision.

108. Defendant further retaliated by denying Mr. Onvani executive severance benefits to which he was contractually entitled (which included prorated payment of his MICP bonus and other benefits), and by depriving him of his right to LTI benefits that were scheduled to vest on January 26, 2020.

109. Defendant upheld the termination and deprived Mr. Onvani of his contractual rights under circumstances that give rise to a reasonable inference that it resulted from unlawful retaliation.

110. Defendant, either directly or by and through its agents, retaliated against Mr. Onvani due to his protected conduct in opposing discrimination based on his race, ethnicity and/or national origin.

111. Defendant's retaliation against Mr. Onvani in the performance and termination of his employment contract, and the denial to Mr. Onvani of equal benefits, privileges, terms and conditions of employment, in violation of Title VII and the CADA, was at all times intentional, malicious, and/or committed in reckless disregard of Mr. Onvani's protected rights.

112. As a direct and proximate result of Defendant's deliberate, malicious and/or reckless retaliatory acts and conduct, Mr. Onvani has suffered significant economic, consequential, special and compensatory injuries, losses and damages.

113. In addition to his other damages, Mr. Onvani is entitled to recover his reasonable attorney's fees, interest and costs under this Fourth Claim for Relief.

### FIFTH CLAIM FOR RELIEF
(*Breach of Contract*)

114. Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

115. In or about June 2015, Defendant entered into a contract of employment with Plaintiff that entitled him to certain benefits, including annual MICP bonuses, annual LTI awards, and executive severance plan benefits.

116. Plaintiff substantially performed the contract by accepting employment for Defendant, and faithfully performing his job for more than four years.

117. Despite Plaintiff's faithful performance of the contract, Defendant breached the contract by unlawfully terminating Plaintiff's employment without justification or cause, then denying him the benefits and other consideration to which he was contractually entitled.

118. As a direct and proximate result of Defendant's breach of the contract, Mr. Onvani has suffered lost wages, compensation, bonuses and other benefits.

WHEREFORE, Plaintiff Marcus Onvani respectfully requests that this Court enter judgment in his favor and against Defendant, and award him all relief as allowed by law including, but not limited to, the following:

a. Reinstatement with back pay and/or other equitable relief pursuant to 42 U.S.C. §§ 1981, 2000e-5(g), and/or C.R.S. § 24-34-405, as established at trial;

b. Lost wages and benefits and other past and future economic losses as provided by law, in amounts to be established at trial;

c. Compensatory damages including, but not limited to past and future non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses in the maximum amount permitted by law, in amounts to be established at trial;

d. Special and consequential damages including, but not limited to relocation expenses;

e. Punitive damages for all claims as allowed by law in an amount to be determined at trial;

f. Pre-judgment and post-judgment interest at the highest lawful rate;

g. Reasonable attorney's fees (including expert fees) and costs as provided by law; and

h. Such other and further relief as justice requires.

Respectfully submitted this 13th day of January, 2021.

          LISA R. SAHLI, ATTORNEY AT LAW, LLC


          *s/Lisa R. Sahli*
          Lisa R. Sahli
          P.O. Box 270834
          Littleton, CO 80127
          (720) 545-1690
          Sahlilaw@gmail.com

          ATTORNEY FOR PLAINTIFF